JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Jerdell Griffin, appeals his conviction in the Cuyahoga County Court of Common Pleas for aggravated robbery and possession of cocaine. For the reasons stated below, we affirm.
 {¶ 2} On September 29, 2004, Griffin was indicted on the charges of aggravated robbery in violation of R.C. 2911.01, a felony of the first degree, and possession of cocaine in violation of R.C. 2925.11, a felony of the fifth degree. The case proceeded to a bench trial, where the following testimony was adduced.
 {¶ 3} Officer Kenneth Dunbrook, a Cleveland police officer, testified that on August 19, 2004, he and his partner, Officer Elbin Negron, were watching for speeding vehicles on East 79th Street. The officers pulled over a vehicle they observed, with use of a laser gun, speeding at a rate of 39 m.p.h. in a 25 m.p.h. zone. Griffin was the driver of the vehicle, and his cousin, Allen Landers, was a passenger.
 {¶ 4} Officer Dunbrook asked Griffin for his driver's license and Ohio insurance card. Officer Dunbrook testified that Griffin responded that "he didn't have them." At that time, Officer Dunbrook had Griffin step out of his vehicle, proceeded to handcuff him, and advised Griffin that he was being arrested for "driving without a license." When counsel asked Officer Dunbrook whether it was normal to arrest someone for driving without a license, Officer Dunbrook responded that it was his normal procedure. Officer Dunbrook also indicated that at that time he did not have any information that Griffin's license might be a suspended license.
 {¶ 5} After placing Griffin under arrest, Officer Dunbrook stated that he took Griffin around to the back of Griffin's vehicle and patted Griffin down for weapons and contraband. While doing so, Officer Dunbrook asked Griffin if his license was suspended. Griffin began mumbling that his driver's license was under suspension. Officer Dunbrook testified he looked into Griffin's mouth and clearly saw a plastic bag. Officer Dunbrook believed the bag contained crack cocaine and ordered Griffin to spit them out. Griffin refused. Officer Negron then assisted by trying to put pressure on Griffin's jaw to try to get the suspected crack cocaine out of Griffin's mouth.
 {¶ 6} Officer Dunbrook stated Griffin began to violently swing around and push off the car with his body and, as a result, the officers directed him to the ground. Officer Griffin then applied pepper spray on Griffin because Griffin was chewing on the substance in his mouth and Officer Dunbrook was concerned Griffin might swallow it. Griffin began to struggle more violently and was attempting to kick Officer Dunbrook. Officer Dunbrook stated he then lay on Griffin's legs to stop him from kicking and Griffin was able to grab Officer Dunbrook's gun with his hands.
 {¶ 7} Officer Dunbrook testified Griffin broke the thumb snap on the holster and attempted to pull the gun out. Officer Dunbrook stated that he could feel Griffin pulling on the gun and that when Officer Dunbrook looked down, he could see Griffin's hands on the gun. Officer Dunbrook told Griffin to let go of the gun, but Griffin did not. In response, Officer Dunbrook hit Griffin's hand, but this had no effect, and Griffin continued to "yank" on the gun, which had a secondary locking mechanism. Officer Dunbrook, feeling he was in danger, then struck Griffin's hand with his flashlight, and Griffin let go of the gun. Officer Dunbrook then was able to reposition himself.
 {¶ 8} Officer Negron was standing near the passenger's window. According to Officer Negron, the passenger had been ordered to place his hands on the dash and did not move from that position and would not have been able to observe the struggle with Griffin. When Officer Negron heard Officer Dunbrook say "spit them out," he dropped back to assist his partner, and he applied pressure to Griffin's jaw. Officer Negron stated Griffin was chewing on the substance, became violent, and was "almost impossible" to control. Officer Negron confirmed that pepper spray was applied and that a struggle continued on the ground. Officer Negron also heard Officer Dunbrook call for help on the radio. Eventually, Griffin did spit out the suspected bag of drugs. Both officers indicated they did not otherwise "crack," "hit," or deliver a blow to Griffin. The officers indicated they only tried to "control" Griffin.
 {¶ 9} Scott Miller, a scientific examiner with the Cleveland Police Department, testified that the substance contained in the bag found in Griffin's mouth tested positive for cocaine, with a total weight of .93 grams.
 {¶ 10} At the close of the state's case, defense counsel made a Crim.R. 29 motion for acquittal with regard to the aggravated robbery charge. The trial court denied the motion.
 {¶ 11} The defense called Griffin and Landers to testify. Landers testified that he is Griffin's cousin. He stated that they were "pulled over for nothing" by the police. Landers stated that Griffin told the police he did not have his license. Landers stated that he heard the police "beating" Griffin. However, Landers stated that he was in the car with his hands on the dashboard and he did not see anything. When the prosecutor asked what Landers heard, Landers responded that he heard screams. Landers also indicated he did not turn around to see what was causing the screams. Landers proceeded to testify that when he was taken out of the car, he saw the officers hitting Griffin. He also stated that one of the officers kicked Landers in the back as the officer was telling Landers to "get up against the car."
 {¶ 12} Griffin testified that he was pulled over and the officer asked him for his license and insurance. Griffin stated that he told the officer, "no, I don't have any," and the officer handcuffed and searched him. Griffin claimed the officers told him to open his mouth, and then they pepper-sprayed him and were hitting him in the stomach. Griffin stated he fell to the ground and the officers were beating him up. Griffin admitted that he had a bag of crack in his mouth. He denied trying to get the officer's gun. He also denied speeding. Photographs were introduced depicting bruises on Griffin's wrists, knee, shoulder and face.
 {¶ 13} The trial court found Griffin guilty as charged on both counts. The court sentenced Griffin to a prison term of three years on the aggravated robbery charge and to a concurrent prison term of six months on the possession charge.
 {¶ 14} Griffin has appealed his conviction, raising two assignments of error for our review. His first assignment of error provides as follows:
 {¶ 15} "I: Jerdell Griffin was denied his constitutional right to effective assistance of counsel, [by] counsel's failure to file or argue a meritorious motion to suppress evidence."
 {¶ 16} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington
(1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Gibson (1980),69 Ohio App.2d 91, 95.
 {¶ 17} Griffin claims that his trial counsel should have filed a motion to suppress because the evidence seized from him was obtained during an illegal arrest. This argument is based on Griffin's erroneous belief that driving without a license is a minor misdemeanor upon which the officers could not make an arrest. In fact, the offense is a misdemeanor of the first degree whether charged under the state code pursuant to R.C.4507.01(A)(1), or the Cleveland Codified Ordinances under C.C.O. 435.01, Driver's or Commercial Driver's License Required, or C.C.O. 435.06, Display of License under C.C.O. 433.09(a)(3). As such, the offense is an arrestable offense.[1] State v.Salter, Cuyahoga App. No. 83194, 2004-Ohio-4086; State v.Bogle, Montgomery App. No. 18722, 2001-Ohio-1455. Because the evidence in the record regarding Griffin's arrest does not establish a basis for filing a motion to suppress, Griffin's first assignment of error is overruled.
 {¶ 18} Griffin's second assignment of error provides the following:
 {¶ 19} "II. Jerdell Griffin's conviction for aggravated robbery is against the manifest weight of the evidence."
 {¶ 20} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which [the trier of fact] could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Leonard, 104 Ohio St.3d 54, 68, 2004-Ohio-6235 (internal quotes and citations omitted).
 {¶ 21} The aggravated robbery statute under which Griffin was convicted, R.C. 2911.01, provides in relevant part:
"(B) No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:
"(1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;
"(2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer."
 {¶ 22} Under this assignment of error, Griffin questions whether it would be physically possible for him to have grabbed the revolver while his hands were cuffed and the officers were holding him down. Griffin claims that it is more likely that Officer Dunbrook's holster brushed against something during the struggle.
 {¶ 23} Upon our review of the record, we find the trier of fact, viewing the record as a whole, could conclude that Griffin knowingly attempted to remove the gun from Officer Dunbrook while the officer was acting within the course and scope of his duties and with knowledge that Officer Dunbrook was a law enforcement officer. Officer Dunbrook testified that when he lay on Griffin's legs to stop him from kicking, Griffin was able to grab Dunbrook's gun with his hands. He stated that Griffin broke the thumb snap on the holster and attempted to pull the gun out. Officer Dunbrook stated he could feel Griffin "yank" on the gun, and when he looked down, he could see Griffin's hands around the gun tugging on it. Officer Dunbrook described the position of Griffin's hands, which were handcuffed, as they were on the gun. Because Griffin would not let go of the gun, Officer Dunbrook hit Griffin's hand in order to get him to let go of the gun. Although Griffin denied grabbing the gun, a rational trier of fact, viewing the record as a whole, could conclude that Griffin's testimony was not credible. We find that there is substantial evidence upon which the trier of fact could reasonably conclude that all the elements have been proved beyond a reasonable doubt.
 {¶ 24} We conclude that Griffin's conviction was not against the manifest weight of the evidence. Griffin's second assignment of error is overruled
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Kilbane, J., concur.
[1] Although the officers did not charge Griffin with the underlying misdemeanor offense, this is of no consequence. The mere fact that the officers chose not to charge Griffin with the additional offense of driving without a license does not indicate a lack of probable cause. The law requires only that the officers have probable cause to believe that a traffic offense had been committed. It is not necessary that they file separate charges on the traffic offense and prosecute it to a conclusion. See Statev. Frazee, Warren App. No. CA2004-07-085, 2005-Ohio-3513.