OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Adam Reed, appeals the decision of the Belmont County Court, Eastern Division denying his motion to suppress evidence relating to his later DVI conviction in violation of R.C. 4511.19. Because the arresting officer in this case did not provide any evidence that Reed was impaired prior to administering field sobriety tests, and thus had no reasonable suspicion that Reed was intoxicated, the officer illegally detained Reed in order to administer the tests. Reed's conviction is vacated and this cause is reversed and remanded for further proceedings as the trial court erred by failing to grant Reed's motion to suppress the evidence stemming from that detention.
 {¶ 2} On March 12, 2005, Reed was traveling on SR 7 in Belmont County when he was pulled over at 1:05 a.m. by an officer who received word by radio from another officer that a vehicle was approaching with a loud exhaust. The arresting officer further reported that before pulling Reed over he noticed that Reed's vehicle windows were improperly tinted. Notably, no moving violations were observed. Upon being stopped, Reed produced a valid license and registration.
 {¶ 3} The arresting officer testified that Reed was polite and cooperative. But he also noted that he detected a slight odor of alcohol and that Reed's eyes were red. Upon questioning, Reed admitted to consuming two beers earlier that evening. Reed was then asked to get out of his car and to submit to several field sobriety tests. The arresting officer reported that Reed failed these tests. He placed Reed under arrest and transported Reed to the station where Reed was given a BAC test with a result of .134.
 {¶ 4} Prior to pleading no contest to a charge of driving under the influence of alcohol in violation of R.C. 4511.19, Reed filed a motion to suppress evidence, which was denied by the trial court after a full hearing.
 {¶ 5} Reed presents two assignments of error for this court's review. Because they encompass similar issues of law, and because Reed makes one sole argument, they will be addressed together. They are as follows:
 {¶ 6} "The trial court committed prejudicial error in its failure to sustain Defendant's motion to suppress for lack of probable cause or reasonable articulable suspicion to arrest this Defendant for driving under the influence of alcohol."
 {¶ 7} "It was `unreasonable' within the meaning of the Fourth Amendment, for the officer to detain Defendant for purposes of conducting field sobriety tests when the officer had no reason to believe that Appellant was intoxicated; thus the trial court erred when it overruled the suppression motion."
 {¶ 8} When considering a motion to suppress, a trial court serves as trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Mills (1992),62 Ohio St.3d 357. Accordingly, a reviewing court must defer to the trial court's findings of fact and conclusions of law if supported by competent, credible evidence. State v. Smith (1997), 80 Ohio St.3d 89,684 N.E.2d 668, 1997-Ohio-355. The appellate court must independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. State v.Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 9} It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law. Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12. Where the officer witnesses a "minor traffic violation," the detention must be brief and limited to the issuance of a citation for the violation in question. State v. Jennings (Mar. 3, 2000), 11th Dist. No. 98-T-0196, 8. However, because any further detention is a greater invasion into an individual's liberty interests, an officer may not request a motorist to perform field sobriety tests unless the request is separately justified by reasonable suspicion based upon articulable facts that the motorist is intoxicated. See, State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156. A court will analyze the reasonableness of the request from the circumstances in their totality viewed through the eyes of a reasonable and prudent police officer. State v. Dye, 11th Dist. No. 2001-P-0140, 2002-Ohio-7158, at ¶ 18.
 {¶ 10} Here, Reed does not contest the propriety of the initial stop. Rather, he contests whether once stopped, the officer had improperly detained Reed in order to conduct field sobriety tests. In State v.Evans (1998), 127 Ohio App.3d 56, the Eleventh District noted a list of factors collected from various cases which may be considered by a court in determining whether an officer had reasonable suspicion to administer field sobriety tests under the totality of the circumstances:
 {¶ 11} "(1) the time of day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor as described by the officer ('very strong,['] `strong,' `moderate,' `slight,' etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably." Id. at fn. 2.
 {¶ 12} Here, the officer testified that he did not witness a moving violation or erratic driving. He further stated that Reed was cooperative and that his speech was good. However, the officer detected a slight smell of alcohol on Reed, that he had red glassy eyes, and admitted to drinking two beers.
 {¶ 13} Reed cites to several cases in his brief that indicate that the slight smell of alcohol, presence of red glassy eyes, along with the admission of drinking an alcoholic beverage do not constitute sufficient grounds to detain a person in order to conduct field sobriety tests without further evidence of physical impairment or erratic driving. It appears that the cases Reed cites, along with several others, would in fact support his contention that the officer improperly detained him.
 {¶ 14} For example, in State v. Dixon (Dec. 1, 2000), 2d Dist. No. 2000-CA-30, the defendant was similarly stopped for having overly tinted windows. Once Dixon was stopped, the officer observed the fact that it was 2:20 in the morning, that Dixon had glassy, bloodshot eyes, that he had an odor of alcohol about his person, and that he admitted that he had consumed one or two beers.
 {¶ 15} In light of these facts, the Dixon court opined:
 {¶ 16} "We cannot distinguish this case from State v. Spillers (Mar. 24, 2000), Darke App. No. 1504, unreported, in which we held that `de minimus' lane violations, combined with a slight odor of an alcoholic beverage and the admission to having consumed `a couple' of beers, were not sufficient to justify the administration of field sobriety tests. In the case before us, unlike in Spillers, supra, a police officer did not observe any erratic driving before administering field sobriety tests. Although, in the case before us, the police officer observed glassy, bloodshot eyes, that observation is readily explained by the lateness of the hour, 2:20 a.m.
 {¶ 17} "The mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence. Nor is the subject's admission that he had had one or two beers.
 {¶ 18} "Perhaps one day it will be illegal to drink and drive. That is not the present state of the law, however. State v. Tay (1981),3 Ohio App.3d 197, at 198, 444 N.E.2d 481.
 {¶ 19} "We recognize that the administration of field sobriety tests is not a great intrusion upon one's liberty, over and above effecting an arrest. However, that additional intrusion is not negligible. If we were to hold that an arrestee can be subjected to field sobriety testing in the absence of a reasonable and articulable suspicion justifying the tests, then an arrestee would be subject to any testing or procedures that police officers might choose, in their unfettered discretion, to require of the arrestee. This would exceed the scope of the proper purpose of the arrest, which is to ensure that the arrestee is available to answer the charges pending against him." Id at 2-3.
 {¶ 20} In State v. Downen (Jan. 12, 2000), 7th Dist. No. 97-BA-53, this court came to a similar conclusion. In that case, the arresting officer testified that the appellant smelled like alcohol. This court noted, however, that the mere odor of alcohol is insufficient to indicate that an individual has been driving under the influence.Taylor, supra, at 198. As the Taylor court explained, and this court agreed:
 {¶ 21} "The mere odor of alcohol about a driver's person, not even characterized by such customary adjectives as `pervasive' or `strong,' may be indicia of alcohol ingestion, but is no more a probable indication of intoxication than eating a meal is of gluttony." Id.
 {¶ 22} This court went on to explain in Downen that the only other evidence offered by the state was the officer's testimony that appellant's performance on the field sobriety tests "showed me that he was impaired." Accordingly, this court reversed the appellant's conviction for driving while under the influence.
 {¶ 23} Other courts have come to similar resolutions. For example, inState v. Brickman (June 8, 2001), 11th Dist. No. 2000-P-0058, the Eleventh District affirmed the trial court's determination that an investigating officer was not justified in further detaining appellee for field sobriety testing after an initial stop for speeding. In that case, the arresting officer initially testified that he pulled Brinkman over for speeding at 8:47 p.m. on a Tuesday evening, Brinkman smelled of alcohol, admitted to "having a beer," had red, glossy eyes and was driving erratically. However, on cross-examination, the officer conceded that the odor of alcohol was mild and acknowledged that his observations about appellee's eyes and reckless driving were not included in his incident report. Accordingly, the trial court sustained Brickman's motion to suppress based upon the impeached testimony of the arresting officer. The Eleventh District affirmed that decision.
 {¶ 24} Similarly in State v. Gustin, (1993), 87 Ohio App.3d 859,623 N.E.2d 244, the Twelfth District found that a trooper lacked the requisite reasonable suspicion to conduct field sobriety tests. There, a trooper responded to a single vehicle accident in which a motorist hit a pole after swerving, on a wet road and in fog, to avoid a deer crossing the road. The motorists' eyes were neither glassy nor bloodshot, his speech was not slurred and the trooper did not detect an odor of alcohol.
 {¶ 25} The Second District has likewise held that:
 {¶ 26} "the smell of alcohol and glassy eyes at a late hour, without more, is not sufficient to conduct a field sobriety test. See,Dixon, supra, at p. 2. However, we conclude that the additional element of erratic driving or specifically a `strong' odor of alcohol seem to tip the scales in favor of allowing the tests." State v. Downing (Mar. 22, 2002), 2nd Dist. No. 2001-CA-78, at 2.
 {¶ 27} There are countless other cases that deal with distinguishable facts which would support an officer's decision to detain a person in order to conduct field sobriety cases. However, those cases would not apply to this situation as the officer failed to give any evidence that Reed not only drank intoxicating beverages, but that he was also impaired. The trial court erred by failing to grant Reed's motion to suppress any evidence that stemmed from his illegal detainment. Reed's assignments of error are meritorious. Accordingly, Reed's conviction is vacated and this cause is reversed and remanded to the trial court for further proceedings.
Donofrio, P.J., concurs.
Vukovich, J., concurs.