[Cite as *State v. Albaugh*, 2015-Ohio-3536.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

      Plaintiff-Appellant

-vs-

JASON ALBAUGH

      Defendant-Appellee

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. Sheila G. Farmer, J.
Hon. John W. Wise, J.

Case No. 2014 AP 11 0049


O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the New Philadelphia Municipal Court, Case No. TRC 1404464 A-B |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | August 28, 2015 |


APPEARANCES:

For Plaintiff-Appellant

RONALD L. COLLINS.
DOVER CITY PROSECUTOR
339 Oxford Street
Dover, Ohio 44622

For Defendant-Appellee

*Wise, J.*

{¶1}. Appellant State of Ohio appeals the decision of the New Philadelphia Municipal Court, Tuscarawas County, which granted a motion to suppress evidence in favor of Defendant-Appellee Jason Albaugh in an OMVI case.[1] The relevant facts leading to this appeal are as follows.

{¶2}. On July 19, 2014, shortly before 10:00 PM, Officer Michelle Seibert of the Dover Police Department stopped Appellee Albaugh near North Wooster Avenue for having no working device to illuminate his rear license plate. After Officer Seibert activated her cruiser's lights and siren, appellee oddly stopped "in the middle of the road" for approximately one minute, rather than pulling off to the right. *See* Tr. at 6. Appellee then pulled his vehicle onto East 6th Street and stopped. *Id.* Seibert noted that North Wooster Avenue is often busy with traffic and is one of the main streets of Dover. *See* Tr. at 7.

{¶3}. When the officer asked for appellee's license, registration, and proof of insurance, appellee handed her his entire wallet. However, after she returned it and asked appellee to pull out the requested documents, he did so. During this encounter, Officer Seibert observed that appellee's eyes were bloodshot and "slightly watery." Tr. at 9. Appellee stated that he worked a twelve-hour shift that day and had consumed two beers that evening. *Id.* At that point, Seibert decided to ask appellee to step from his vehicle for field sobriety tests. *See* Tr. at 13. After appellee exited his car, the officer noticed a strong odor of alcoholic beverage on his breath.

---

[1]   Appellee has not filed a brief in the within appeal.

{¶4}. The officer conducted field sobriety testing, and appellee was thereupon charged with one count of OMVI and improper rear license plate illumination.

{¶5}. On September 12, 2014, appellee filed a motion to suppress the results of his roadside stop. On October 31, 2014, the matter came on for a suppression hearing. During the hearing, at the point at which the prosecutor was questioning the Officer Seibert about the horizontal gaze nystagmus ("HGN") test, the judge interrupted and indicated she desired to bifurcate the suppression hearing by allowing cross-examination about events prior to the officer's removal of appellee from his vehicle and commencement of field sobriety testing. *See* Tr. at 12-13. In so doing, the judge effectively decided that any suppression hearing evidence beyond the request for appellee to perform the HGN test could be presented later.

{¶6}. After appellee's trial counsel cross-examined the officer, the trial court orally ruled as follows:

{¶7}. "THE COURT: At this point I just, I just don't think there's sufficient evidence, unless you want to argue, I mean I think we're kind of having a, it's a little odd to do it this way but it's somewhat of a conversation, but you know, I think she lights him up, he stops and then he, you know, it is or it isn't a good place to stop so he turns. I mean we often see where people will pull into a parking lot or get off of the main road so I don't have any problem with pulling someone over and giving them a ticket for rear plate illumination, but then I think in terms of the progression to the point where law enforcement is entitled to say to a citizen you got to get out of your car because I'm going to conduct further investigation, I don't think that there's sufficient evidence here for that.

**{¶8}.** "* * *

**{¶9}.** "I am going to grant the defendant's motion to suppress from the point that the defendant was, any evidence from and after the point that the defendant was asked to exit the vehicle would be suppressed at trial so, and I'll issue a written decision on that. Thank you."

**{¶10}.** Tr. at 17-18.

**{¶11}.** On November 10, 2014, the trial court issued a written judgment entry granting appellee's suppression motion.

**{¶12}.** The State thereupon certified that the ruling made it unable to effectively proceed with a prosecution (*see* Crim.R. 12(K)), and filed a notice of appeal on November 14, 2014. It herein raises the following sole Assignment of Error:

**{¶13}.** "I. A COURT ERRS IN GRANTING A MOTION TO SUPPRESS BASED UPON A FINDING THAT A POLICE [SIC] LACKED REASONABLE SUSPICION TO PROCEED TO REQUEST A SUSPECT PERFORM FIELD SOBRIETY TESTS WHEN THE DEFENDANT MADE A BIZARRE STOP IN THE MIDDLE OF THE A [SIC] BUSY STREET RATHER THAN PULL TO THE RIGHT, HAD BLOODSHOT, SLIGHTLY WATER [SIC] EYES, HANDED THE OFFICER HIS ENTIRE WALLET IN RESPONSE TO A REQUEST FOR LICENSE, REGISTRATION, AND PROOF OF INSURANCE, AND ADMITTED HAVING CONSUMED TWO BEERS."

I.

**{¶14}.** In its sole Assignment of Error, the State contends the trial court erroneously granted Appellee Albaugh's motion to suppress. We agree.

{¶15}. The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

{¶16}. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. However, as the United States Supreme Court held in *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶17}. As an initial matter, we note the trial court in the case *sub judice* found the initial stop valid, based on the missing license plate illumination. But the court specifically determined that "the arresting officer did not have sufficient cause to detain the Defendant beyond the original reason for the stop and order him to exit his vehicle to perform field sobriety tests." Judgment Entry, November 10, 2014, at 1. Our present

task is thus to analyze the reasonableness of the officer's utilization of field sobriety testing ("FST") in the context of the overall traffic stop.

{¶18}. "A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop, and must be separately justified by other specific and articulable facts showing a reasonable basis for the request." *State v. Anez* (2000), 108 Ohio Misc.2d 18, 26, 738 N.E.2d 491. In reviewing this issue, we apply a "totality of the circumstances" approach. *See, e.g., City of Fairfield v. Lucking,* Butler App. No. CA2002–12–303, 2004–Ohio–90, ¶ 8, citing *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044. We have further recognized that the intrusion on a driver's liberty from an FST is minor, and the officer need only have reasonable suspicion of the driver operating under the influence in order to conduct the testing. *See State v. Spitler,* 5th Dist. Stark No. 2014CA00157, 2015-Ohio-2286, ¶ 18.

{¶19}. As set forth in our recitation of facts, appellee initially stopped his vehicle in the "middle of the road" on North Wooster Avenue, one of Dover's main streets, after Officer Seibert activated her overhead lights and siren. Tr. at 6. After about one minute in this position, appellee "slowly crept forward" with his car and turned onto a side street before coming to a final stop. *Id*. We find this action by appellee ignored the fundamental safety procedure of pulling off to the right as much as practicable when responding to a public safety vehicle (*see, e.g.*, R.C. 4511.45) and thereby constituted erratic driving under the circumstances.

{¶20}. Subsequently, when the officer asked for appellee's license, registration, and proof of insurance, appellee either disregarded or miscomprehended her specific request by simply handing her his entire wallet. After she returned it and asked appellee

to pull out the requested documents, he apparently did so without difficulty or fumbling. However, appellee's eyes at that time were described as bloodshot and "slightly watery." Tr. at 9.  Appellee then stated that he had worked a twelve-hour shift that day but he admitted to having consumed "two beers" that evening. *Id.*

{¶21}. Upon review, even disregarding that Officer Seibert noticed a strong odor of alcoholic beverage on appellee's breath *after* appellee exited his car and extinguished his cigarette, based on the above factors we hold a reasonable basis existed for the officer to ask appellee to step out and to proceed with field sobriety testing under the circumstances of this case. We therefore hold the trial court erred in granting the motion to suppress in this regard.

{¶22}. Accordingly, the State's sole Assignment of Error is sustained.

{¶23}. For the reasons stated in the foregoing opinion, the judgment of the New Philadelphia Municipal Court, Tuscarawas County, Ohio, is hereby reversed and remanded for further proceedings.

By: Wise, J.

Farmer, J., concurs.

Hoffman, P. J., dissents.


JWW/d 0803

*Hoffman, P.J. dissenting*

{¶24} I respectfully dissent from the majority's decision to reverse the trial court's judgment granting Appellee's motion to suppress. In doing so, I concede the facts presented make this decision the proverbial "close call".

{¶25} Of utmost significance to my decision is the fact the initial stop of Appellee's vehicle was for an equipment violation as compared to a moving violation. Although the equipment violation provides legal justification for the traffic stop, it bears no indicia of impaired driving.

{¶26} Unlike the majority, I do not find Appellee's response to the officer's activation of the overhead lights and siren constituted "erratic driving". While I concede stopping in the road was odd or unusual, I do not find it indicative of impairment.[2] I would find likewise as to the significance of Appellee handing the officer his entire wallet. Many, if not most, motorists become nervous when pulled over by the police. While handing over his entire wallet was again odd or unusual, it was in fact responsive to the officer's request. Of far more significance was the fact Appellee was then able to pull out the requested documents without apparent difficultly after the officer returned the wallet to him. Such would diminish suspicion of impairment.

{¶27} I find the time of the stop not particularly telling. The stop occurred shortly before 10:00 p.m. on a Saturday night. Had the stop occurred in the early morning hours of Sunday morning, such would be a factor in analyzing the reasonableness of the officer's suspicion of impairment.

---

[2] While the officer noted North Wooster Avenue is often busy with traffic, such description stops short of saying there was heavy traffic at the time of this stop shortly before 10:00 p.m.

{¶28} While Appellee offered a plausible explanation for his eyes being bloodshot and slightly watery, nonetheless such condition is a recognized common indicia of consuming alcohol. Appellant did admit to having two beers that evening. However, it remains the law of Ohio it is not illegal to drink and drive unless the amount of alcohol consumed exceeds the per se limit or results in an appreciable impairment of one's ability to operate a motor vehicle.

{¶29} Based upon the above, I agree with the trial court there was insufficient evidence of impairment to justify the officer's request Appellee exit his vehicle to perform field sobriety tests.