[Cite as *State v. Lorenzo*, 2015-Ohio-3737.]


COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2015 CA 0011 |
| GABRIELLE LORENZO | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Canton Municipal
Court, Case No.  2014TRC7559


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    September 14, 2015


APPEARANCES:

For Plaintiff-Appellee    For Defendant-Appellant

ANTHONY FLEX    JACOB T. WILL
ASSISTANT PROSECUTOR    116 Cleveland Avneue N.W.
218 Cleveland Avenue S.W.    Suite 808
Canton, Ohio  44702    Canton, Ohio  44702

*Wise, J.*

{¶1}    Appellant Gabrielle Lorenzo appeals the decision of the Canton Municipal Court, Stark County, which denied her motion to suppress evidence in an OVI case.

{¶2}    Appellee is the State of Ohio.

STATEMENT OF THE FACTS

{¶3}    The relevant facts leading to this appeal are as follows:

{¶4}    On or about October 26, 2014, Appellant Gabrielle Lorenzo was charged with two counts of Operating a Vehicle Impaired, in violation of R.C. §4511.19, both of which were based on the same conduct.

{¶5}    On November 21, 2014, Appellant filed a Motion to Suppress.

{¶6}    On December 16, 2014, a suppression hearing was conducted. At issue were whether the officer had reasonable, articulable suspicion to stop the vehicle and then subsequently ask her to exit her vehicle and whether probable cause existed to arrest Appellant.

{¶7}    At the suppression hearing, the State called Ohio State Patrolman Nicholas Goodnite as their only witness. Trooper Goodnite testified that he was on patrol on October 26, 2014, at approximately 12:03 a.m. near Cleveland Avenue and Interstate 77 when he noticed a grey Volvo driving toward him. (T. at 6-7). Trooper Goodnite testified that this area is heavily patrolled due to the number of OVI related crashes, OVI drivers, fatalities, and nearby bars. (T. at 9).

{¶8}    He stated that his attention was drawn to the grey Volvo because as the vehicle approached his cruiser it appeared to be "one huge ball of light" as compared to two distinct separate headlights like the vehicle ahead of the Volvo. (T. at 7). This

indicated the high-beam headlights were activated on the Volvo (T. at 7, 19). Trooper Goodnite testified that high-beams being activated on a vehicle at night will cause drivers driving the other direction to see spots that can affect their vision for oncoming cars. (T. at 8).

{¶9} Upon witnessing the high beams being active, Trooper Goodnite conducted a traffic stop of the grey Volvo. (T. at 8). Upon approaching the vehicle, Goodnite noticed a female driver, who was later identified as Appellant and a male passenger. (T. at 8). When he approached the vehicle, Goodnite detected the odor of alcohol coming from the vehicle. Upon speaking with Appellant, she admitted to having had some alcohol to drink. (T. at 8). Goodnite testified that Appellant's eyes were bloodshot and glassy. (T. at 9). At that time, Goodnite asked Appellant to exit the vehicle and requested that she perform field sobriety tests. (T. at 9-11). Once Appellant was outside of the vehicle, Trooper Goodnite could still detect a moderate odor of alcohol coming from her.  (T. 9, 16, 21-22).

{¶10} Goodnite classified the odor of alcohol he detected as moderate, although he agreed on cross-examination that he did not include that detail in his report. (T. at 16, 22).

{¶11} Trooper Goodnite conducted three standardized field sobriety tests  and a portable breath test on Appellant during the traffic stop, which he stated were all conducted according to his training. (T. 9-13). Six out of a possible six clues were observed during the Horizontal Gaze Nystagmus test, which indicated to Trooper Goodnite that there was a seventy percent (70%) chance Appellant would test at 0.10 BAC or higher. (T. at 10). Two clues were observed during the walk and turn test and no

clues were observed during the one-leg stand test. (T. at 11-12, 25-27).

{¶12} At the conclusion of the field sobriety test, Trooper Goodnite offered Appellant a portable breath test since she had indicated that she had taken thyroid medication that day. (T. at 12-14). He explained that this test was done to ensure the clues he observed were due to alcohol and not any medication she was taking. (T. at 12). Appellant took the portable breath test, which yielded a 0.096 BAC. (T. at 12-13).

{¶13} After Appellant was arrested she was transported to the highway patrol post and asked to provide a breath sample on a Datamaster machine. (T. at 16-17). Appellant's sample was a 0.086 BAC. (T. 17-18).

{¶14} By Judgment Entry filed, December 18, 2014, the trial court denied Appellant's motion to suppress.

{¶15} On December 18, 2014, Appellant entered a plea to one count of OVI.

{¶16} The trial court sentenced Appellant to 3 days in jail or a Driver's Intervention Program, a six-month license suspension from October 26, 2014, and was ordered to complete 25 hours of community service.

{¶17} Appellant now appeals, raising the following sole Assignment of Error:

{¶18} "I. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS."

I.

{¶19} In her sole Assignment of Error, Appellant argues the trial court erroneously denied her motion to suppress. We disagree.

{¶20} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibits the government from conducting unreasonable

searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

**{¶21}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. However, as the United States Supreme Court held in *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

**{¶22}** In the case *sub judice*, Appellant herein argues that Trooper Goodnite "lacked cause to have Appellant submit to field sobriety tests." (Appellant's Brief at 7). Appellant also contends that there was not probable cause to arrest her.

**{¶23}** "Requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment. Courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of

alcohol in order to conduct a field sobriety test." *State v. Bright,* 5th Dist. Guernsey No. 2009–CA–28, 2010–Ohio–1111, ¶17, citing *State v. Knox,* 2nd Dist. Greene No. 2005–CA–74, 2006–Ohio–3039.

**{¶24}** In reviewing this issue, we apply a "totality of the circumstances" approach. *See, e.g., City of Fairfield v. Lucking,* Butler App. No. CA2002–12–303, 2004–Ohio–90, ¶ 8, citing *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044.

**{¶25}** In support of her position, Appellant cites *State v, Keserich*, 5th Dist. Ashland County, Case No. 2014-CA-011, 2014-Ohio-5120. In *Keserich*, this Court reversed the decision of the trial court overruling Keserich's motion to suppress. In Keserich, the defendant was stopped for not having a light illuminating his rear license plate. Upon stopping Keserich, the officer observed bloodshot and watery eyes, and he admitted to having consumed two alcoholic beverages. Based on these facts, the officer requested that Keserich perform field sobriety tests. This Court, under the facts in this case, found that defendant's bloodshot eyes could have been attributed to the fact that there were four or five other passengers in the car who were smoking. This Court found that this possible explanation for the bloodshot eyes, together with the stop being based solely on an equipment violation and the lack of any observation of erratic driving, was not enough to form a basis to request performance of the field sobriety tests.

**{¶26}** We find this case to be distinguishable from *Keserich*, *supra*.

**{¶27}** In the instant case, as set forth in our recitation of facts, Trooper Goodnite stopped Appellant because she was driving with her high-beam lights on. He testified that such action could pose a danger to other drivers. Additionally, upon stopping

Appellant he observed that her eyes were bloodshot and glassy, and that there was an odor of alcohol coming from the vehicle. Appellant admitted to the consumption of alcohol. Additionally, it was 12:03 a.m. on a Sunday morning in an area where bars are located.

{¶28} Upon review, based on the above factors, we hold a reasonable basis existed for Trooper Goodnite to ask Appellant to step out of her vehicle and proceed with field sobriety testing under the circumstances of this case and that probable cause existed for the arrest.

{¶29} We therefore hold the trial court did not err in denying the motion to suppress in this matter. Accordingly, Appellant's sole Assignment of Error is overruled.

{¶30} For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Baldwin, J., concur.

JWW/d 0910